IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. SA-22-CR-304-XR |
| | )                       SA-23-CR-136-XR |
| SEAN AARON SMITH. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorneys, and hereby files its Sentencing Memorandum, and states:

Defendant pled guilty to all counts in both of the above-captioned criminal matters without plea agreement. The advisory sentencing guidelines that place him at an offense level 22 for the two felon in possession charges and an offense level 24 for each of the six arson charges. The combined adjusted offense level is 26 after acceptance of responsibility. The defendant's criminal history is III. The advisory guideline range is 78 to 97 months. Each of the six arson charges carries a minimum mandatory sentence of five (5) years and up to 20 years imprisonment.   The advisory sentencing guidelines for the arson charges do not adequately address the multiple attempts to burn down cellular towers by the Defendant for which he pled guilty as well as the other 16 towers that circumstantial evidence and expert opinion tie directly to him. A sentence totaling no less than 180 months is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct to the Defendant and other like-minded individuals, and to protect the public, in particular first responder firefighters, from further crimes of the defendant.

**Statement of Facts**

A.  **Felon in Possession, SA-22-CR-304-XR**

The Defendant, Sean Aaron Smith, had convictions at the time he committed the instant offenses for burglary of a habitation in 2014 and felon in possession of a firearm in 2018. The Defendant served approximately 18 months for burglary. The Defendant served almost 14 months for felon in possession of a firearm.

1.  **Count One, 18 U.S.C. § 922(g)**

On May 13, 2022, Texas Rangers, Texas DPS, San Antonio police, and San Antonio Fire Arson investigators made a high-risk traffic stop of the Defendant in San Antonio. The Defendant barricaded himself in the vehicle and broke a cellular phone to prevent it from being used as evidence. When the Defendant exited the vehicle and law enforcement took him into custody, law enforcement found a brick of marijuana next to his backpack and a handgun on the floorboard next the Defendant's seat. The handgun was a 9mm Polymer80, Inc. PFC9.

2.  **Count Two, 18 U.S.C. § 922(g)**

On May 15, 2022, law enforcement obtained a state search warrant and searched Smith's and his girlfriend's known address at a San Antonio apartment. Law enforcement found an AK-47 and a Sig Sauer pistol in the living room where Smith and his girlfriend both stayed and slept.

B.  **Arson, SA-23-CR-136-XR**

San Antonio Fire Department (SAFD) Arson Bureau began investigating 22 cell tower fires in Northwest San Antonio beginning on April 10, 2021, with the last one on May 12, 2022 that SAFD Arson determined to be arson. All of these towers are used and affect interstate and foreign commerce as these are the backbone of cellular telephone service, including 911

emergency communications. Through the course of the investigation, SAFD Arson Investigators, and the Texas Rangers identified the Defendant Sean Aaron Smith as the Subject in six of these fires. Eyewitnesses with direct knowledge told law enforcement Smith conducted the arson activity and held anti-government sentiments. Witnesses reported the Defendant was on a "mission" to destroy the 5G towers because he hated the Government and believed they were spying on him. The SAFD arson investigator's expert opinion is the *modus operandi* of the other 16 cellular tower arsons match the six towers for which the Defendant pled guilty and that all 22 arsons were committed by the same person. *See* Attachments 1 and 2. Part of the Defendant's *modus operandi* was to avoid detection by disguising himself as a workman, wearing a mask to cover his face, and attacking the cellular tower at night or early morning hours. The SAFD arson investigator would also testify no cellular tower arsons have been committed in Bexar County since the Defendant was arrested by the State on May 13, 2022 and kept in jail. *Id.* The total loss amount for the 22 cell tower arsons was over $1.115 million. *See* Attachment 3.

    1.    **Count One, 18 U.S.C. § 844(i)**

On April 10, 2021, an ATT Cell Tower Technician discovered multiple areas of fire damage after the cell tower was losing power at a cell tower located at 1704 SW Loop 410, San Antonio, belonging to Crown Castle/Sprint/T-Mobile. This was the first cell tower fire in this series of arsons. The SAFD Arson investigator determined that the cause was arson and the suspect attempted to cause fires in multiple places on and around the tower. Located at the scene were a green cigarette lighter, an electrical device not belonging to the victim, and two burned towels. Smith's palm print was lifted from the cigarette lighter.

2. **Count Two, 18 U.S.C. § 844(i)**

On May 8, 2021, a T-Mobile Technician was dispatched to the same cell tower location, 1704 SW Loop 410, after the tower lost power and he discovered another fire. The SAFD Arson investigator responded to the scene to discover extensive fire damage to the tower and the electrical panels. Arson was determined to be the cause and the new damage was additional to the April 10 arson damage. Both the fence and electrical cabinet locks were cut with wire or bolt cutters A red cigarette lighter and a black glove were located at the scene. A DNA analysis determined that Smith's DNA was on the glove.

3. **Count Three, 18 U.S.C. § 844(i)**

On May 24, 2021, the SAFD Arson investigator responded to a cell tower fire at 1818 Hunt Lane, San Antonio and determined someone had set multiple fires causing damage to the tower, fiber optic cables, and other communication equipment. A video showed the Defendant, wearing a workman's vest, and his girlfriend walking towards the cell tower. Video from the tower shows Smith using charcoal lighter fluid as an accelerant to ignite a fire on the cell tower.

4. **Count Four, 18 U.S.C. § 844(i)**

On March 1, 2022, the SAFD Arson investigator responded to a cell tower fire at 5705 Ingram Road, San Antonio. He determined that arson caused fire damage to the tower and communication equipment causing a loss of two service lines and partial service. A hair found in a pair of boxer shorts used to start the fire was located at the scene matched the Defendant's DNA.

5. **Count Five, 18 U.S.C. § 844(i)**

On April 29, 2022, the SAFD Arson investigator responded to a smoldering cell tower fire at 918 Bandera Road, San Antonio. The fire damaged the fiber optic lines and communications equipment and matched the other fire scenes where fabric and accelerants were used to light the fires on the equipment. The security fence had been cut open and two Gatorade bottles were found with accelerant. The Defendant's fingerprints were on one of the bottles. A video obtained at the site of the cell tower fire showed a car with the Defendant in it right after the fire was set.

6. **Count Six, 18 U.S.C. § 844(i)**

On May 2, 2022, the SAFD Arson investigator responded to 12955 Huebner Road, San Antonio for a cell tower next to a U.S. Post Office. Arson was the cause of the heavy fire damage to the tower that reached to the very top of the tower damaging the fiber optics and communication equipment. An eyewitness placed the Defendant at a vehicle nearby the location of tower immediately prior to and after the tower was set on fire and could testify regarding the Defendant's arson activities and his anti-government sentiments. The witness could testify the Defendant stated that he was "on a mission to destroy the 5G towers because he hated the government, and they were spying on him."

## Argument

In Title 18, United States Code, Section 3553, Congress set forth the factors courts should consider when imposing a fair and just sentence. Section 3553(a) states the Court "shall impose a sentence sufficient, but not greater than necessary." Section 3553(a) requires to the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed (1) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Court shall also consider the kinds of sentences available and the sentencing range established under the sentencing guidelines. 18 U.S.C. § 3553(a)(4), (5). Section 3553(a)(6) also requires the Court to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct when imposing its sentence.

**1.   Avoiding Unwarranted Sentencing Disparity for Similar Cases**

Under 18 U.S.C. §3584, which references §3553(a), the Court has the discretion to order consecutive terms of imprisonment. Since each of the arsons counts carries a minimum mandatory sentence of five years and the Defendant pled guilty to setting fires to six cellular towers, the Court could fairly require the Defendant to serve a sentence for each arson consecutively. A similarly situated defendant who pleads guilty to one arson would end up with a five-year sentence. Even with the increase in adjustment level pursuant to U.S.S.G. §3D1.4, the five-level increase to 78 to 97 months for the other five arsons is slight in comparison to the additional damage and disruption these five additional crimes caused. Section 3D1.4, even if the other 16 arsons were factored into the Presentence Report, would not add any other offense levels for these arsons. Thus, the sentencing guidelines do not reasonably contemplate a concerted spree to destroy cellphone towers in a city.

### 3. Specific Deterrence

The combined two and a half years the defendant has served on his burglary of a habitation and his felon in possession convictions was clearly insufficient to deter the defendant from committing further criminal acts. When the Defendant was approached by the police on May 13, 2022, he showed his contempt for lawful instructions by refusing to immediately get out of the car instead taking the time to break his cell phone, presumably to destroy its evidentiary value. In his knapsack, he had a handgun and a half pound of marijuana.

The Defendant was definitively tied to six cellular tower arsons to which he pled guilty to the indicted charges through video surveillance, fingerprints, and DNA. As detailed in the attached statement by San Antonio Fire Department Arson Investigator Jesse Moncada, it is Investigator Moncada's expert opinion the 22 cellular tower arsons from April 10, 2021, to May 12, 2022, including the six to which the Defendant pled guilty to, were all caused by the same person on persons. *See* Attachments 1 and 2. Investigator Moncada formed his opinion using the arson investigation national standards, NFPA 921 and NFPA 1033, based on the similarities of modus operandi such as wrapping communication wires with clothing and igniting them, the timing of the fires in the night or early morning hours, that six of the fires were definitively tied to the Defendant and the last of the 22 fires happened the day before the Defendant was captured and no arsons occurred since. *Id.* The other factors supporting Investigator Moncada's opinion that all 22 arsons were committed by the person or persons include the items found in the search of the Defendant's residence matching the arsons including bolt cutters used to make entry to some of the tower sites, cellular tower signage collected by the Defendant presumably as trophies, and construction worker clothing and a mask that were similar to what was also captured on video. *Id.*

7

Luckily, no San Antonio firefighters were injured responding to any of the Defendant's 22 arsons. However, 911 service was in fact severed because of the Defendant's arson at 5710 Ingram Road (Count 4).

The sentencing guidelines do not contemplate a 22-tower arson spree meant to shut down the cellphone system to follow a bizarre anti-government philosophy. In order to deter the Defendant from committing future crimes and in order to protect both the public and critical infrastructure from the Defendant, the Defendant should receive a sentence of no less than 180 months imprisonment.

4. **General Deterrence**

There has been a disturbing trend over the last three years in the United States and other Western countries that violent conspiracy theorists and far-right extremists have targeted critical infrastructure, including cellular telephone towers and power grids in order to push their bizarre theories and sow chaos attempting to accelerate the destruction of the political system and society. The increased focus and attacks on this critical infrastructure by extremists and conspiracy theorists like the Defendant has the potential to wreak extensive societal damage and disruption impacting communications, public safety, and the economy. *See* Attachment 4, Colin P. Clarke, Mollie Saltskog, Michaela Millender, & Naureen Chowdhury Fink, *The Targeting of Infrastructure by America's Violent Far-Right,* Vol. 16 Combating Terrorism Center at West Point Issue 5 (May 2023)(https://ctc.westpoint.edu/the-targeting-of-infrastructure-by-americas-violent-far-right/).

Congress deemed one arson against a critical infrastructure so serious as to take the extraordinary step of mandating a minimum mandatory sentence of five years. The sentencing

guidelines in this case only increases the Defendant's sentence around three years for the other five arsons he pled guilty to let alone the other 16 cell tower arsons he set. Short of consecutive sentences for each arson, without a substantial upward variance under Section 3553, the sentencing guidelines incentivizes like-minded individuals to commit more arsons since the consequences do not significantly increase enough to deter these potential criminals from committing more arsons.

In order to provide general deterrence to those extremists who might be tempted to do exactly as the Defendant has pled guilty to and to protect the public, the United States submits it is necessary to sentence the Defendant to no less than 180 months imprisonment.

## Conclusion

WHEREFORE, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the United States respectfully requests this honorable Court sentence the Defendant to no less than 180 months imprisonment.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

/s/_____
MARK T. ROOMBERG
Assistant United States Attorney
State Bar 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January 2024, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System that will transmit notification of such filing to the following CM/ECF participant:

Marina Douenat, Esquire

Lorraine Arauza, U.S. Probation Officer

/s/_____
MARK T. ROOMBERG
Assistant United States Attorney